UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:07-CV-471-R

JACK HOLT, JR.                                                                                          PLAINTIFF

v.

JPMORGAN CHASE BANK, N.A.                                                              DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court upon Defendant's Motion for Summary Judgment (Docket #17). Plaintiff has responded (Docket #22). Defendant has replied (Docket #29). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

Plaintiff Jack Holt, Jr. ("Holt") is a former employee of Defendant JPMorgan Chase Bank, N.A. ("Chase"). Until his termination in February 2006, Holt served as the banking center manager of Chase's Shelby, Kentucky branch. Holt is sixty-three years old.

In August 2007, Holt filed the present action in Kentucky state court alleging that Chase engaged in unlawful age discrimination, created a hostile work environment, and retaliated against him in violation of Kentucky's Civil Rights Act, KRS § 344.010 *et seq*. The action was subsequently removed to federal court on the basis of diversity jurisdiction. Holt does not allege any federal claims.

On February 2, 2004, Holt attended a branch manager meeting, the purpose of which was to introduce Paul Schram, a recent hire, as the new district manager. Each branch manager was asked to introduce himself. Holt alleges that upon indicating how long he had worked at Chase, Schram, along with Jay Wells, a former district manager and then market manager, laughed at

him.  Holt alleges that Schram then commented that he was not even born when Holt began working at the bank, while Wells remarked that he was just a baby at the time.  Holt alleges that he felt ridiculed by their remarks.

About a week later, Holt met with Schram and Wells for his annual evaluation.  Unlike his past evaluations, Holt claims that this one was more akin to a cross-examination or interrogation.  Wells asked Holt when he intended to retire.  Holt replied that he had no intention of retiring.  Wells then told Holt, "I just don't think you're going to be able to duplicate the performance you had the previous year."  Holt alleges that Wells's inflection in asking the question, plus the timing of the comments in conjunction with the previous week's meeting, contributed to Holt's feeling of workplace hostility towards his age.

A month later, Schram began taking corrective actions against Holt.  Specifically, Holt alleges that Schram increased his oversight of Holt's daily work performance and began to unfairly discipline him.  Holt claims that the discipline was unfair because Schram's warnings did not reflect his true performance.  Holt began cataloguing these events in a personal journal.  Holt describes in his journal feeling continually criticized by Schram.  Holt also complains of being passed over for a transfer he was seeking at another bank branch.  Holt alleges that the position at the other bank branch was ultimately filled by a woman younger than himself.

In early February 2005, Holt complained of these events to Kerri Phillips Bower, his human resources representative at Chase.  Holt informed Bower that he believed Schram and Wells were discriminating against him on the basis of his age.  Upon investigating Holt's complaint and reviewing the corrective actions taken against him, Bower concluded that the corrective actions were appropriate, not motivated by discrimination, and should remain in place.

On February 23, 2005, Holt suffered a heart attack and received short-term disability leave from Chase. Holt remained on short-term disability for the maximum twenty-six week period. Beginning on August 24, 2005, Holt sought long-term disability leave. On December 8, 2005, Chase denied Holt's long-term disability leave request. Holt appealed the denial. Throughout this time, Holt did not return to work and Chase did not terminate his employment.

On February 2, 2006, Bower recommended that Holt's employment be terminated. Her recommendation was based on Holt's failure to return to work and his indication in previous conversations with Bower that he did not intend to return to work. Holt's employment with Chase was terminated later that month. Holt alleges that he was replaced by Ms. Gutierrez, who was then thirty-eight years old.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which

the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

### A.  Age Discrimination

Under Kentucky's Civil Rights Act, it is unlawful to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over . . . ." KRS § 344.040(a). The Kentucky Supreme Court has adopted the *McDonnell Douglas* framework in interpreting the Act. *See Childers Oil Co., Inc. v. Adkins*, 256 S.W.3d 19, 25 (Ky. 2008); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). The *McDonnell Douglas* framework is a burden-shifting test that allows the plaintiff to establish a case of discrimination through inferential and circumstantial proof. *Williams*, 184 S.W.3d at 495; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination. *Williams*, 184 S.W.3d at 496. The plaintiff does this by proving that he or she: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position from which he or she was discharged; and (4) was replaced by a person outside the protected class. *Id.* (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d

337, 349 (6th Cir. 1997)). "In age discrimination cases the fourth element is modified to require replacement not by a person outside the protected class, but replacement by a significantly younger person." *Id.* (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). The Kentucky Supreme Court has yet to settle the issue of how many years younger a replacement has to be in order to satisfy the significantly-younger requirement. *Id.* In *Williams v. Wal-Mart, Inc.*, the court determined that eight years younger was sufficient. *Id.*

As a preliminary matter, Chase argues that Holt confuses the exact adverse employment action that provides the basis for his age discrimination claim in his response brief. Having reviewed Holt's complaint and response brief, the Court understands Holt to argue that the adverse employment action taken by Chase was his wrongful termination. Holt does allege that he requested a transfer from the Shelby branch to another branch in Indiana and that his request was denied. Holt also alleges that a woman younger than he got the job in Indiana. However, Holt only refers to his transfer request once in his response brief. The focus of his age discrimination argument is his allegedly unlawful termination.

The parties do not dispute that Holt is a member of a protected class, was discharged from his employment at Chase, and was qualified for the position from which he was discharged. However, Chase does dispute that Holt has satisfied his burden of proving that he was replaced by a younger person. Holt alleges that prior to his termination, but while he was still on short-term disability leave, a colleague gave him the business card of a Ms. Gutierrez, who was thirty-eight years old and had replaced him at Chase. Although the business card has not been admitted into the record, Holt testified in his deposition to its existence. (Holt Dep. 6:20-9:7, April 24, 2008.) The Court finds this evidence sufficient for Holt to meet his prima facie burden.

Once the plaintiff has established a prima facie case, then the burden shifts to the employer to articulate a "legitimate non-discriminatory reason" for the termination decision. *Id.* at 497 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). "The defendant bears only the burden of production and this involves no credibility assessments." *Id.*

Chase argues that it terminated Holt because he failed to return to work following the completion of his short-term disability leave. Chase offers as evidence Bower's termination recommendation, which states that Holt was denied long-term disability leave and terminated for his failure to return from his short-term disability leave. The Court finds that this is a legitimate, nondiscriminatory reason for Chase's termination decision.

After the employer provides a legitimate, nondiscriminatory reason for the termination, the plaintiff must persuade the trier of fact by a preponderance of the evidence that the employer unlawfully discriminated against him or her. *Id.* "In order to prevail, the plaintiff must typically demonstrate that the employer's stated reason for the termination was merely a pretext, masking the discriminatory motive." *Id.* Pretext can be shown by demonstrating that "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). "In order to prove pretext, therefore, the plaintiff must introduce admissible evidence to show that the proffered reason was not the true reason for the employment decision and that discriminatory animus was the true motivation driving the employer's determination." *Grace v. USCAR*, 521 F.3d 655, 677-78 (6th Cir. 2008) (internal citations and emphasis omitted).

Chase argues that Holt offers only assertions, not facts, in support of his argument that Chase's reason for his termination is pretext for a discriminatory motive. Holt does not argue that Chase's proffered reason has no basis in fact or that it was insufficient to warrant his termination. Instead, Holt argues that Chase's proffered reason did not actually motivate his termination. As evidence of pretext, Holt offers his journal entries and one email sent by Schram, both of which he argues demonstrate discriminatory animus on the basis of age by Chase employees. Holt's journal entries document the comments made by Schram and Wells at the branch meeting and at Holt's annual evaluation. Holt offers a September 24, 2004 email sent by Schram to multiple Chase employees as evidence of Schram's discriminatory conduct towards older employees generally. In the email, Schram writes, "Jim, did they have camera's back then???" in response to a request that employees bring baby pictures of themselves to an upcoming branch celebration.

Holt does not dispute that he was terminated after failing to return to work following the denial of his long-term disability request. Holt offers no evidence, affidavits, or other factual information in support of his claim other than his own assertions and one email. In contrast, Bower's affidavit, her report and recommendation of Holt's termination, and the emails of Eloise Gries Cookson, Chase's assistant general counsel, all demonstrate that Chase sought to reinstate Holt at his position following the end of his short-term disability leave, but ultimately had to terminate him when he failed to return to work. Even when viewed in a light most favorable to Holt, his assertions and one isolated email, without more, are insufficient to raise a factual question as to whether Chase's alleged actions were pretextual. *See Malloy v. Potter*, 266 Fed. App'x 424, 2008 WL 482277, at *2 (6th Cir. 2008) (finding that plaintiff's assertions alone

7

insufficient to establish pretext of discrimination); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a [sic] discrimination claim to withstand a motion for summary judgment."). Therefore, the Court finds that Holt has failed to meet his burden of establishing that Chase's legitimate nondiscriminatory reason for his termination was merely pretext.

## B.  Hostile Work Environment

In *Ammerman v. Board of Education of Nicholas County*, the Kentucky Supreme Court adopted the federal framework for interpreting a hostile work environment claim under the Kentucky Civil Rights Act. 30 S.W.3d 793, 797-98 (Ky. 2000). The court explained,

> [H]ostile environment discrimination exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Moreover, the "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."

*Id.* at 798 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999); *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)).

To establish a hostile work environment claim, a plaintiff must show that his work environment was both objectively and subjectively hostile. *Slayton v. Ohio Dept. of Youth Servs.*, 206 F.3d 669, 678 (6th Cir. 2000). An objectively hostile work environment exists where a "reasonable person in the plaintiff's position, considering all the circumstances" would find the environment hostile. *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal citations omitted)). Courts look to the following factors to determine whether an objectively hostile work environment exists: the frequency of the discriminatory conduct; its

8

severity; whether it is physically threatening, humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 678-79 (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 789-90 (6th Cir. 2000)).

Chase argues that the isolated incidents complained of by Holt do not rise to the level of a severe and pervasive hostile work environment. Holt disagrees, arguing that when the Court considers the totality of the circumstances, as it must in this case, it is clear that Holt suffered repeated humiliation in the presence of his peers from Schram and Wells's comments, was subject to increased scrutiny by Schram in the form of daily phone calls and emails, and was unfairly disciplined throughout the course of a year.

There can be no question that Holt subjectively believed his work environment at Chase was hostile. In his journal entries, Holt repeatedly emphasized his feeling that Schram unfairly criticized his work performance. What is less clear is the extent to which his feeling was the result of age discrimination or a personality conflict between himself and Schram. Objectively, the specific instances of discriminatory ridicule alleged by Holt are few. They include comments made by Schram and Wells during a branch meeting, comments made by Wells during Holt's annual evaluation, and an email sent by Schram mocking another employee's age.

The Court finds that the record before it fails to demonstrate an objectively "continuous and concerted" hostile work environment. The evidence offered by Holt documents only two instances of age discrimination, the comments made to him by Schram and Wells at the board meeting and at his annual evaluation, and one age-related joke Schram made about a co-worker in an email. Even when taken as true, these instances do not amount to a pervasive course of discriminatory conduct. *See Johnson v. Rumsfeld*, 238 Fed. App'x 105, 108 (6th Cir. 2007)

9

(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) ("'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)' do not amount to a hostile work environment."); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (three alleged instances of discrimination insufficient to rise to level of pervasive discriminatory conduct). Nor is the Court persuaded that the numerous criticisms and increased scrutiny by Schram amount to discriminatory conduct. The only evidence Holt offers of these criticisms are his journal entries, and Holt's own description of them indicate that they were based on his work performance and not his age. For these reasons, the Court finds that Holt has failed to establish a hostile work environment.

Because the Court has determined that Holt has failed to meet his burden of demonstrating a hostile work environment, the Court need not consider Chase's affirmative defense that it exercised reasonable care to prevent and promptly correct the harassing behavior alleged by Holt.

**C. Retaliation**

Kentucky Revised Statute § 344.280(1) makes it an unlawful practice for two or more persons to conspire "to retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter . . . ." "A prima facie case of retaliation requires a plaintiff to demonstrate '(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004) (quoting

*Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991)).

Initially, Chase argues that Holt conceded that he does not allege a retaliation claim. Chase cites to Holt's deposition testimony, wherein Holt answered the question, "Are you making a claim for retaliation?," with the response, "No." (Holt Dep. 21:22-24, April 24, 2008.) Holt explains that the context surrounding the question demonstrates that he simply did not understand exactly what he was being asked. Earlier in the deposition Holt had reviewed the complaint and testified that it contained no inaccuracies. (Holt Dep. 12:3-9, April 24, 2008.) Having reviewed the deposition in full, the Court finds that Holt did not concede his retaliation claim.

Next, Chase argues that Holt cannot establish a prima facie case of retaliation because he cannot show that a causal connection exists between his complaint to Bower about the alleged discriminatory conduct of Schram and Wells and his subsequent termination. Holt responds that he engaged in two protected activities, the first when he directly complained to Schram, and the second when he complained to human resources. He argues that the timing of Schram's disciplinary actions against him combined with Schram's constant age-related comments and criticisms demonstrate a casual connection between the complaints and his termination.

Holt does not offer any direct evidence of a causal connection. Therefore, he must establish a causal connection through circumstantial evidence. *Brooks*, 132 S.W.3d at 804. "Circumstantial evidence of a causal connection is 'evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'" *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). "In most cases, this requires proof that (1)

11

the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *Id.*

The Sixth Circuit recently elaborated on what is meant by temporal proximity. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008). The court explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* at 525. In *Hamilton v. General Electric Company*, the Sixth Circuit concluded that the combination of increased scrutiny by an employer plus the temporal proximity of his firing three months later is sufficient to establish the causal nexus needed to establish a prima facie case of retaliation. 556 F.3d 428, 435-36 (6th Cir. 2009).

As to the protected activity of directly complaining to Schram, Chase argues that there is no evidence that Holt ever complained to Schram about his offensive comments. Holt argues in his response brief that he directly complained to Schram and that his doing so was a protected activity, but he cites no evidence, such as an affidavit or deposition testimony, in support of his argument. Holt's deposition testimony reveals that he complained directly to Schram on at least two occasions. (Holt Dep. 35:20-36:11, 67:24-68:19, April 24, 2008.) The first time he did so was shortly after his annual evaluation in February 2004. (Holt Dep. 35:20-36:11.) However, Holt was not terminated until sometime in February 2006, almost two years later. This is not the sort of temporal proximity sufficient to establish a prima facie case of retaliation. *See Clark*

*County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding no temporal proximity where twenty months had elapsed between protected activity and adverse employment action).

The second time Holt complained to Schram was after Schram began using the corrective action process against him. (Holt Dep. 67:24-68:19.) This occurred sometime in late 2004 or early 2005. In *Hamilton*, the Sixth Circuit emphasized that an *increase* in an employer's scrutiny following his engagement in a protected activity is sufficient, along with temporal proximity, to establish a causal connection. 556 F.3d at 436. Here, Schram had already begun using the corrective action process against Holt when he complained. Thus, there was no increase in the corrective action process after Holt complained because the process was already underway. Furthermore, Holt testified that he did not complain to Schram about his discriminatory conduct, but rather of Schram's unfair behavior generally. Thus, it unclear whether Holt actually engaged in a protected activity when he complained to Schram.

The parties do not dispute that Holt engaged in a protected activity. Assuming that he did, it is nonetheless uncertain exactly when he did so. Based on the Court's review of Holt's deposition testimony and relying on his own calculation, Holt's complaints to Schram occurred roughly a year prior to his termination. Given the multiple uncertainties surrounding Holt's allegations and the likelihood that Holt complained to Schram over a year prior to his termination, the Court finds that Holt has failed to meet his burden of demonstrating a causal connection sufficient to establish his retaliation claim.

As to the protected activity of complaining to human resources, Chase argues that temporal proximity cannot be established because Holt complained to Bowers in February 2005 but was not ultimately terminated until a year later in late February 2006. Furthermore, his

13

termination followed a year of time during which he was out on short-term disability and then did not report back to work. The Sixth Circuit has held that "the causal connection element is satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007). Because Holt was not terminated until a year after he complained to Bower, Holt cannot establish temporal proximity sufficient for the Court to infer a causal connection. Holt offers no other circumstantial evidence to suggest that his termination was caused by the complaints he made to Bowers. For these reasons, the Court finds that Holt's retaliation claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. All claims against Defendant are dismissed.

An appropriate order shall issue.